DE BAVIER et al. v. FUNKE.

(Supreme Court, General Term, First Department. December 16, 1892.)

1. SALE—ACTION FOR PRICE—PURCHASE SUBJECT TO APPROVAL.
    Defendant, a silk manufacturer, ordered plaintiffs, commission merchants, to purchase for him in Italy several bales of raw material, "subject to approval, * * * and equal to cornaredo," which latter was the product of a particular factory. Held, in an action for the price, where there was evidence that the goods were equal to cornaredo, the court properly refused to dismiss on the ground that, having bought "subject to approval" defendant had a right to reject the goods.
2. PURCHASING AGENT—WHAT CONSTITUTES—EVIDENCE.
    Plaintiffs imported the goods on their own credit, under an agreement with defendant to accept payment in four months' notes, while defendant had no communication with the persons from whom plaintiffs obtained the silk, and gave plaintiffs a net price, which was to cover commissions. Held, that it was a question for the jury whether plaintiffs were defendant's agents in the transaction.
3. SAME—LIABILITY TO PRINCIPAL.
    Purchasing agents are only bound to use a reasonable degree of care in carrying out their principal's commands, and there is no implied guaranty by them that the goods purchased shall be the same as ordered.
4. SAME—REFUSAL TO ACCEPT GOODS—REMEDY OF AGENT.
    After having given defendant full opportunity to examine the goods, on his refusal to accept them, and after due notice, plaintiffs were entitled to sell the goods on his account to save expense and loss.

Appeal from circuit court, New York county.

Action by Ernest De Bavier, Oscar R. Meyer, and Ernst Grund against Hugo Funke. From a judgment for plaintiffs, entered on a verdict, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Plaintiffs' Exhibits A, B, C, D, E, F, G, and H, referred to in the opinion, are as follows:

"Exhibit A.

"Dated College Point, L. I., July 25, 1888.

"To Bavier, Meyer & Co., 482 Broome: Will take fifteen bales October, December, four twenty-five.                                    Hugo Funke."

"Exhibit B.

"Bavier, Meyer & Co.

"New York, July 25, 1888.

"Hugo Funke, Esq., College Point, L. Is.—Dear Sir: We are in receipt of your telegram of this morning, according to which we have cabled to Milan, to buy for your account 15 bales cornaredo, at the parity of $4.25, 4 mos., Oct.–Dec. delivery, which please note. You may rest assured that we shall do our best to get in at your limit, and, as soon as we receive answer from Milan, we shall again communicate with you. Always pleased to be at your service, we remain, dear sirs,

"Yours, truly,                    [Signed]     Bavier, Meyer & Co."

"Exhibit C.

"College Point, L. I., July 25, 1888.

"Messrs. Bavier, Meyer & Co., New York—Dear Sirs: In reply to your yesterday's favor, I telegraphed this morning as fols.: 'Will take fifteen bales October, December, four twenty-five,' which I herewith confirm, and remain,

"Yours, truly,                                    Hugo Funke."

"Of course, I expect the same cornaredo as previously received, and terms 4 m. from del. here. What about 1 bl. Cevennes?"

"Exhibit D.

"Bavier, Meyer & Co.

"New York, July 30th, 1888.

"Hugo Funke, Esq.—Dear Sir: We herewith beg to confirm to you the purchase for your account of 15 bales Italian raw silk, chop gold ticket, at $4.25, 4 mos.' notes, for delivery 5 bales per month during October, November, and December, all of which please note and confirm. We congratulate you on this acquisition, which is to-day already 22c. below market quotations. Japan silk is still 'en pleine hausse,' [rising steadily,] and nobody can see the end of it yet. Always pleased to be at your service, we remain, dear sir,

"Yours, truly,　　　　　　　　[Signed]　　　Bavier, Meyer & Co."

"Exhibit E.

"College Point, L. I., July 31st, 1888.

"Messrs. Bavier, Meyer & Co., New York—Dear Sirs: Yours of yesterday received. I have noted and herewith confirm your purchase for my account, mentioned therein, of 15 bales Italian raw silk, chop gold ticket (quality equal to cornaredo,) at $4.25, four months' notes, 5 bales each to be delivered in October, November, and December. I remain, dear sirs,

"Yours, truly,　　　　　　　　[Signed]　　　Hugo Funke."

"Exhibit F.

"Milan, College Point, N. Y., July 31, 1888.

"If advisable, buy fifteen bales more, lowest December, February.　　Funke."

"Exhibit G.

"8/2, 1888.

"Received at 8.38 a. m. Dated Milano, 2 Via New York, 2.

"To Funke, College Point, L. I.:

"Executed order 31st.　　　　　　　15 bl. classic, 46¼.
　"(sleight)　　　　　　　　　　　(botching)
"Decr.–Febr.
"(indecent)

"Bavier."

"Exhibit H.

"College Point, L. I., Aug. 3rd, 1888.

"Messrs. Bavier, Meyer & Co., Milan—Dear Sirs: Herewith I beg to confirm my cable of July 31st, viz.:

　"'If advisable, buy fifteen bales more lowest December–February,' and the receipt of your cable of Aug. 1st,

　　'Suspense　　　　　roisterer　　　　　botching,' market 1¼ frcs. higher, we expect to buy shortly, 15 bales 46¼, followed by one Aug. 2nd,

　　'Sleight　　　　botching　　　　indecent.' executed order 31st. 15 bales class. 46¼. December–Feb.,—meaning that my order of July 31st has been executed. The silks I expect to be equal to cornaredo, and not of the woolly character. Please give me the name of the filanda of both lots. The last lot must be charged at the same terms as the first. I cannot yet believe in higher prices, and expect a sudden reaction in Japan silks.

"Truly yours,　　　　　　　　　　　Hugo Funke."

Argued before VAN BRUNT, P. J., and O'BRIEN and LAWRENCE, JJ.

Larned, Warren & Knapp, (Ira D. Warren, of counsel,) for appellant.

Lachman, Morgenthau & Goldsmith, (Samson Lachman, of counsel,) for respondents.

LAWRENCE, J. The action was brought to recover damages in the sum of $987.70, and interest, sustained by reason of the refusal of the defendant to accept 10 bales of silk purchased for and on his behalf by the plaintiffs. The complaint sets forth that the plaintiffs, commission

merchants in New York and Milan, were employed by the defendant, a silk manufacturer of College Point, to purchase on his account 15 bales of raw silk, under an agreement whereby the plaintiffs were to import said silk under their own credits, and to receive payment therefor, and for their commission, in four months' notes; a purchase of 15 bales; the expenditure of large sums therefor; the acceptance by defendant of 5 bales, and the refusal to accept the balance: notice by plaintiffs of their intention to sell these 10 bales on a specified date; the sale and consequent loss of the amount claimed. The answer alleges a contract to purchase the 15 bales of the plaintiffs; admits the acceptance of 5 bales, and settlement therefor; also the tender of 5 additional bales, and refusal to accept them, on the ground, as claimed, of the inferiority in quality; denies tender of the last 5 bales, and alleges their inferiority, likewise; and contains, further, a counterclaim for $438.12 damages alleged to have been sustained by the defendant on the 5 bales admitted to have been accepted and used, and 5 bales of a prior purchase on the ground that the silk was "guarantied" by plaintiffs "to be of cornaredo filature, strictly classical in quality," and that it was in reality inferior. The averments of the counterclaim were put in issue by the reply.

The facts in this case are somewhat complicated, the rights and interests of the parties depending upon various letters and telegrams, which were put in evidence on the trial; and, without a thorough examination of these letters and telegrams, it is impossible to arrive at a correct determination of the issues involved in the action. From an examination of the evidence, both documentary and oral, we are of the opinion that the contract between the plaintiffs and the defendant is to be deduced from Exhibits A, B, C, D, E, F, G, and H, and that they establish that the defendant agreed to purchase, through the plaintiffs, 15 bales of silk, deliverable during the months of October, November, and December, 1888, and 15 more bales between December, 1888, and February, 1889. In the order for the first 15 bales, under date of July 25, 1888, the defendant said: "Of course, I expect the same cornaredo as previously received, and terms, four months from delivery here." In fulfillment of the first order, the plaintiffs notified the defendant that they had bought, "subject to approval, gold ticket quality, guarantied equal to cornaredo, which is now unobtainable at any price." In the order for the second lot, the defendant stated that he "expected the silks to be equal to cornaredo, and not of the woolly character." Exhibit H. There was, therefore, no warranty that the goods should be of cornaredo filature. They were guarantied to be equal to cornaredo, which was unobtainable. The defendant, under this contract, or under these contracts, if the transactions are to be regarded as two separate transactions, accepted 15 bales, which were delivered under the first order, and 5 bales, which were delivered under the second order. His counterclaim is in respect to 5 bales delivered under the first, and 5 other bales delivered under the second, order. He had a right to demand, in the first instance, that the silk should be equal to the cornaredo filature; but it seems to us that

after acceptance and payment for certain bales, when he had had a full opportunity for inspecting and examining them, he is estopped from now alleging that they were inferior to the cornaredo filature, and from claiming damages therefor. However that may be, the defendant gave evidence tending to show the inferiority of 9, not 10, bales of silk to the cornaredo filature; and the question of the counterclaim was fully submitted to the jury by the justice before whom the cause was tried, and was found adversely to the defendant.

In respect to 10 other bales deliverable on the second order, which the defendant refused to accept, different questions are presented. It is claimed by the appellant, in the first place, that the plaintiffs are principals, and not agents, in the transaction, and that they were, therefore, guarantors that the silk was equal in quality to the cornaredo filature; and, secondly, that the goods were purchased subject to approval, and that he had the right to reject any of the silk, if, in his opinion, it did not suit him, or was not available for his business, or was not equal to the cornaredo filature, for any reason. If this be granted to be a correct interpretation of the contract between the parties, the defendant claims that the court below erred in denying the motion which was made by the defendant to dismiss the complaint at the close of the case. We are of the opinion that this view of the defendant's rights cannot be maintained. He had not the right capriciously to refuse to approve the goods, if in point of fact they were equal to cornaredo filature; and there was evidence to the effect that the goods delivered were equal to cornaredo filature. Such evidence being before the court, it had no right to take the question from the jury by a dismissal of the complaint. The question as to whether the goods were equal to those of cornaredo filature was fairly presented, by the learned justice who tried the cause, to the jury; and, the evidence being conflicting, their determination of the question of fact is final.

It is contended that the justice erred in the comments which he made upon the testimony of two of the expert witnesses; but, referring to the charge, we find no error in that respect. The justice said:

"If you believe the testimony of Mr. Moll and Bourdis, then the goods furnished by the plaintiffs to the defendant were equal to cornaredo filature, and were classical in quality, and complied with the agreement made by the plaintiffs."

The justice did not affirm that the whole agreement between the parties had been complied with, in the event of their believing those witnesses, but merely that the plaintiffs had made out that the goods complied with the agreement between the parties; and a perusal of the testimony of those witnesses substantiates the statement. The defendant had a right to a fair and reasonable opportunity to approve the 10 bales tendered under the second order; and, if he was not afforded that opportunity, plaintiffs cannot recover in this action. It is strenuously insisted by his counsel that he did not have such an opportunity. This position cannot be sustained. On the 27th of February, 1889, the defendant positively declined to accept any more silk from the plaintiffs, and requested them not to send him any "further correspondences regarding this matter, as they will find no attention."

On the 18th of March, 1889, he abandoned this position, and stated in a letter sent to the plaintiffs that on further consideration he would receive the further shipments under the contract, if the quality of the silk was satisfactory as per agreement, but notified them that he should hold them for damages for defective quality in the shipment of the four bales. These four bales were all part of the first lot, and had been already accepted and paid for; and, as already stated, it was too late for the defendant to counterclaim in respect to them. As to the remaining ten bales, it appears that the defendant had refused to accept five of them. And, as to the other five, it appears that the condition papers had been sent to him as early as April 10, 1889. The sale did not take place until the 15th of April, or five days later than the papers were sent to him. On the 13th the defendant was informed by letter that he could examine the goods at the warehouse of the auctioneers on Monday, the 15th inst., the day of sale. According to the evidence of Grund, the examination would not have taken over half an hour. We do not think that it can be asserted, in the face of the correspondence and the oral testimony, that the defendant did not have an opportunity to examine the goods as fully as it was necessary to enable him to determine as to their condition and quality. The plaintiffs were not obliged to wait for an indefinite time for him to make up his mind as to whether he would accept or reject the goods; and, having waited an appropriate time, they were entitled, after notifying him, to sell the same, to save expense and loss.

Various exceptions were taken on the trial to the rulings of the court upon the admission and rejection of evidence, also to the charge as delivered, and to the refusal of the justice to charge certain of the requests made by the defendant, some of which should be considered. The defendant requested the court to charge that the plaintiffs were not the agents of the defendant, but were commission merchants, and the sellers of this silk, as between themselves and the defendant, and were themselves liable on the guaranty to furnish silk equal to cornaredo. This was refused, and the defendant's counsel excepted. Standing alone, this refusal might have availed the defendant on this appeal; but, upon reference to the charge as delivered, it will be seen that the court had already instructed the jury that, if the goods were purchased from the plaintiffs, "the plaintiffs guarantied that they were equal to cornaredo filature." He also charged:

"They have done their duty, they have complied with the law, if they have furnished to the defendant a quality of goods classical, and equal to cornaredo filature; and it is for you to say, from the evidence in the case, whether or not they did in fact furnish to the defendant this quality of goods."

And the jury had also been previously instructed as follows:

"The plaintiffs say that they were employed by the defendant as agents. The defendant denies that, and alleges that he purchased from the plaintiffs. So you will determine, in the first instance, whether the plaintiffs were acting as agents of the defendant, or whether they were acting as principals. These facts are to be determined from the evidence in the case. If the plaintiffs were acting as agents of the defendant, then they were bound to use a reasonable degree of care in carrying out his commands; and if they used such degree of care, even if they failed in carrying out his command, they would not be liable for the failure.

They were bound, as agents, to act in good faith towards the defendant; and if they have so acted in good faith, and with a reasonable degree of care and skill, —such skill as you would expect from men in their business,—they are not liable, although there was a mistake on their part."

The question whether the plaintiffs were acting as principals or agents was on the evidence, as we think, properly left to the jury; and, as they had been fully charged by the court as to the law applicable to either of those relations, it was not error to refuse to state over again a proposition which had already been correctly presented by the court.

The defendant submitted 11 requests to the justice to charge certain propositions. The 1st, 2d, 4th, 8th, and 10th of those requests had been fully covered by the charge. The 5th, 6th, and 7th requests were properly refused, for the reason that the defendant had, by his own acts, precluded the plaintiffs from giving him other and further opportunity to examine the goods, as has been already stated in the previous portion of this opinion. As to all the other requests which were refused, we deem it only necessary to say that the questions which they were designed to present had been already fully presented to the jury in the charge; and it was, therefore, not erroneous to refuse to repeat them.

The exception taken, at folio 54 of the case, to the admission of testimony as to the price obtained upon the sale of the silk, cannot avail the defendant, for the reason that if it should be found by the jury that the defendant had capriciously or unreasonably neglected or refused to accept the goods, regarding the plaintiffs either as principals or agents in the transaction, that testimony was proper to show precisely what damages had been sustained by the plaintiffs by that refusal.

Finally, our review of this case satisfies us that the questions which it involves were fully covered by the judge's charge; that no error, in substance, was committed during the trial; and that, therefore, the order and judgment below should be affirmed, with costs and disbursements.

VAN BRUNT, P. J., concurs in result.  O'BRIEN, J., concurs.